Citation Nr: AXXXXXXXX
Decision Date: 08/31/21 Archive Date: 08/31/21

DOCKET NO. 210701-171181
DATE: August 31, 2021

ORDER

Entitlement to an initial compensable rating prior to September 18, 2019, and a rating higher than 10 percent thereafter, for bilateral hearing loss is denied.

REMANDED

Service connection for a thoracolumbar spine disability is remanded.

Service connection for left leg weakness and falls, to include as secondary to a thoracolumbar spine disability is remanded.

FINDING OF FACT

The Veteran's hearing acuity was no worse than Level III in both ears prior to September 18, 2019; thereafter, the Veteran's hearing acuity is no worse than Level III in the right ear and Level IV in the left ear.

CONCLUSION OF LAW

The criteria for an initial compensable rating prior to September 18, 2019, and a rating higher than 10 percent thereafter, for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.85, Diagnostic Code (DC) 6100.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the U.S. Army from August 1958 to September 1959.

In January 2018, a rating decision was issued under the legacy system, which granted service connection for bilateral hearing loss and assigned an initial noncompensable rating and denied service connection for a thoracolumbar spine disability. The Veteran submitted a timely notice of disagreement. In November 2019, the agency of original jurisdiction (AOJ) issued a statement of the case (SOC). 

In January 2020, the Veteran submitted a VA Form 20-0995, Decision Review Request: Supplemental Claim, the Veteran requested readjudication of service connection for a thoracolumbar spine disability and opted into the modernized review system, also known as the Appeals Modernization Act (AMA). Additionally, the Veteran requested readjudication of service connection for leg weakness and falls, which was addressed in a December 2019 rating decision. The December 2019 the rating decision constitutes an initial decision; therefore, the AMA applies. In February 2020, the AOJ issued a supplemental claim decision, which found that new and relevant evidence had been received for the issues of service connection for a thoracolumbar spine disability and leg weakness and falls and denied the claims based on the evidence of record at the time of that decision. See 38 U.S.C. § 5104A; 38 C.F.R. § 3.104(c). 

In November 2020, the Veteran submitted a VA Form 20-0996, Decision Review Request: Higher-Level Review (HLR), and requested review the February 2020 supplemental claim decision. Additionally, the Veteran requested review of a November 2019 rating decision, which increased the Veteran's rating for bilateral hearing loss to 10 percent effective September 18, 2019. In March 2021, the AOJ issued the HLR decision on appeal, which considered the evidence of record at the time of the prior November 2019 and February 2020 decisions.

In the July 2021 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the November 2019 rating decision for the issue of entitlement to a higher rating for bilateral hearing loss and the February 2020 supplemental claim decision for the issues of service connection for a thoracolumbar spine disability and left leg weakness and falls. 38 C.F.R. § 20.301.

Increased Rating for Bilateral Hearing Loss

The Veteran contends that a higher rating is warranted for his service-connected bilateral hearing loss. He is currently assigned a 0 percent (noncompensable) rating prior to September 18, 2019, and a 10 percent rating thereafter. After review of the record, the Board concludes that the preponderance of the evidence is against finding that a compensable rating is warranted prior to September 18, 2019, and a rating higher than 10 percent is warranted thereafter. 38 C.F.R. §§ 4.7, 4.85, 4.86, DC 6100.

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate DCs. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. Where entitlement to compensation has already been established and an increase in the disability rating is at issue, present level of disability is the primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Evaluations of defective hearing range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of a controlled Maryland CNC speech discrimination test together with the average hearing threshold level measured by pure tone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hertz). 38 C.F.R. § 4.85, DC 6100.

To evaluate the degree of disability from bilateral service-connected hearing loss, the schedule establishes 11 auditory hearing acuity levels designated from Level I for essentially normal hearing acuity through Level XI for profound deafness. 38 C.F.R. § 4.85, Tables VI and VII.

Table VI in 38 C.F.R. § 4.85 is used to determine the numeric designation of hearing impairment based on the pure tone threshold average from the speech audiometry test and the results of the Maryland CNC speech discrimination test. The vertical lines in Table VI represent nine categories of the percentage of discrimination based on the controlled speech discrimination test. The horizontal columns in Table VI represent categories of decibel loss based on the pure tone audiometry test. The numeric designation of impaired hearing (Levels I through XI) is determined for each ear by intersecting the vertical row corresponding to the percentage of discrimination and the horizontal column corresponding to the pure tone decibel loss.

The percentage evaluation is derived from Table VII in 38 C.F.R. § 4.85 by intersecting the vertical column corresponding to the numeric designation for the ear having the better hearing acuity and the horizontal row corresponding to the numeric designation level for the ear having the poorer hearing acuity. 

The Veteran underwent a VA examination in December 2017. Pure tone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 30 30 50 75 46

LEFT 30 60 90 105 71

Speech audiometry revealed speech recognition ability of 88 percent in the right ear and of 92 percent in the left ear. Applying the results to Table VI, the findings yield a numeric designation of Level II in both ears. Under Table VII, this results in a noncompensable rating.

The Veteran's VA treatment records show that he underwent an audiological evaluation in March 2019. Pure tone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 30 30 50 70 45

LEFT 30 50 75 95 63

Speech audiometry revealed speech recognition ability of 80 percent in the right ear and of 84 percent in the left ear. Applying the results to Table VI, the findings yield a numeric designation of Level III in both ears. Under Table VII, this results in a noncompensable rating.

The Veteran was last afforded a VA examination for his bilateral hearing loss in September 2019. Pure tone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 30 35 50 70 46

LEFT 30 50 75 95 63

Speech audiometry revealed speech recognition ability of 80 percent in both ears. Applying the results to Table VI, the findings yield a numeric designation of Level III in the right ear and Level IV in the left ear. Under Table VII, this results in a 10 percent rating.

Based on the above audiometric test results and a mechanical application of the rating criteria, the Board finds that the Veteran was is not entitled to a higher rating for his bilateral hearing loss.

The Board expressly acknowledges its consideration of the lay evidence of record when adjudicating this claim, including the Veteran's statements that he is required to wear hearing aids, struggles if the speaker is not face to face with him or if there is background noise, difficulty hearing his wife in the car, has to have the TV volume up loud at home, and has difficulty talking on the phone. The Board has also considered the Veteran's wife's statement that the Veteran cannot hear well. However, the functional impact that the Veteran and his wife describes is contemplated by the rating criteria. Doucette v. Shulkin, 28 Vet. App. 366 (2017).

While the Board is sympathetic to the Veteran's claim, disability ratings for hearing loss are derived from a mechanical, meaning nondiscretionary, application of the rating schedule to the numeric designations resulting from audiometric testing. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). 

Unfortunately, the preponderance of the evidence is against finding that a compensable rating prior to September 18, 2019 and a rating higher than 10 percent thereafter for the Veteran's bilateral hearing loss is warranted. Therefore, the claim must be denied.

REASONS FOR REMAND

Service Connection for a Thoracolumbar Spine Disability and Left Leg Weakness and Falls

Under the AMA, the Board must remand to the AOJ to correct pre-decisional duty to assist errors (including when the AOJ failed to make reasonable efforts to obtain VA treatment records or relevant federal or private treatment records, failed to obtain a VA examination, or provided an inadequate VA examination or opinion). 38 C.F.R. § 20.802(a).

The Veteran contends that his thoracolumbar spine and left leg disability are directly related to lifting heaving equipment and spades during service as part of his duties in the Field Artillery Division, which caused left hip pain and resulted in medical separation from the military. The Veteran also contends that his left leg disability is related to his thoracolumbar spine disability. 

The Veteran has not been afforded a VA examination to determine the nature and etiology of his claimed thoracolumbar spine disability. Accordingly, remand is required to afford the Veteran a VA examination.

The Veteran was afforded a VA examination in October 2019 for his claimed left leg weakness and falls. The examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The rationale stated that service treatment records are silent regarding complaints, diagnosis, or treatment for leg weakness. Additionally, the rationale stated that x-rays in 1972 demonstrated that the Veteran had a bilateral pars articularis defect, which is a congenital condition just as his left hip coxa vera was a congenital condition. The rationale further stated that as a result of this condition and the Veteran's weight gain, he developed multiple back problems. Additionally, the rationale stated that the Veteran's service treatment records are silent regarding complaints, diagnosis, or treatment of a back condition and the Veteran did not present for treatment for his left hip until 1967, 8 years after discharge from service. The rationale also stated that the Veteran was diagnosed with cervical and lumbar stenosis and has had multiple surgeries primarily on his lumbar spine and has subsequently developed a postlaminectomy syndrome with residual radiculopathy and possibly cervical myelopathy. 

The Board finds that the October 2019 VA opinion is inadequate for adjudication purposes because it is conclusory and does not adequately address the Veteran's contentions, including that his in-service left hip disability is not congenital. Accordingly, remand is necessary to obtain an addendum VA opinion. 

The evidence of record also shows that there may be outstanding private treatment records related to the Veteran's back and leg disabilities. See VA Treatment Records received February 2020. Therefore, remand is necessary to request these records to ensure that there is a complete record upon which to decide the claim, so the Veteran is afforded every possible consideration.

The matters are REMANDED for the following action:

1. Contact the Veteran and request that he identify all private providers of medical treatment for his thoracolumbar spine disability and left leg weakness and falls. Request that he provide authorization for release of all identified private medical records to VA. All actions to obtain the requested records should be fully documented in the record. The RO must make two attempts to obtain any private records identified, unless the first attempt demonstrates that further attempts would be futile.

2. Schedule the Veteran for a VA examination with an appropriate physician regarding the nature and etiology of any diagnosed thoracolumbar spine disability and left leg disability. The entire claims file must be made available to the examiner and review must be noted. The examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's disability had its onset in service, or is related to any in-service injury, event, or disease, to include in-service treatment for his left hip.

The examiner is advised that the Veteran is competent to report matters within his personal knowledge, to include as to injury experienced, and that lay assertions in this regard must be considered in formulating the requested opinion. If lay assertions in any regard are discounted, the examiner should clearly so state, and explain why. 

The examiner should consider the Veteran's medical history and lay statements of record, including that he hurt his hip and back in Germany in the Field Artillery Division in 1959, he did not have any problems with his hip prior to service, and he took pain medication after service. See March and September 2018 NOD; see also June 2017 Correspondence.

The examiner should also consider the evidence submitted by the Veteran noting that coxa vara is a deformity of the hip, whereby the angle between the head and the shaft of the femur is reduced to less than 120 degrees resulting in the leg being shortened and the development of a limp and is commonly caused by injury, such as a fracture. See August 2019 Disability Benefits Questionnaire (DBQ).

A complete rationale must be provided for all opinions offered.

 

 

JOHN Z. JONES

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board T. Kernen, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.